UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| KENDRICK A. JOHNSON, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Case No. 09 C 5189 |
| | ) | |
| v. | ) | District Judge Ronald A. Guzman |
| | ) | |
| MICHAEL J. ASTRUE, | ) | Magistrate Judge Geraldine Soat Brown |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

This case comes before the court on plaintiff Kendrick Johnson's motion for attorneys' fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (Pl.'s Mot.) [Dkt 30.] The District Judge granted in part and denied in part plaintiff's motion for summary judgment, which challenged the decision by the Commissioner of Social Security ("Commissioner") denying in part plaintiff's application for social security benefits. (Mem. Op. & Order.) [Dkt 28.] The District Judge remanded the case back to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). Plaintiff then brought the present motion for attorneys' fees and costs, seeking an award of $5,777.37. (Pl.'s Mot.; Pl.'s Reply at 9.) [Dkt 40.] The motion was referred to this court. [Dkt 41.] Because the Commissioner's position in this case was not substantially

1

justified, plaintiff's motion is granted and he is awarded fees and costs in the amount of $5,780.98.[1]

## Background[2]

On May 10, 2006, plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act, alleging he had been disabled due to narcolepsy and depression since June 1, 2000. (R. 15.)[3] Plaintiff's claims were denied initially and upon reconsideration, and he thereafter sought a hearing before an administrative law judge ("ALJ"). (*Id.*) A hearing was conducted on September 22, 2008. (*Id.*)

On October 10, 2008, the ALJ issued a written decision finding that plaintiff was not disabled prior to December 7, 2005. (R. 15-20.) The ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform "light" work prior to December 7, 2005.[4] (R. 18.) The ALJ gave substantial weight to the opinion of the medical expert who testified at the hearing, who opined that plaintiff's narcolepsy was not severe prior to that date. (R. 18, 20.) The ALJ also found that plaintiff's "statements concerning the intensity, duration and limiting effects of [his alleged]

---

[1] The slight variation between plaintiff's request and the actual award is due to an apparent typographical error in plaintiff's brief where the amount requested does not match the amount recorded in the itemized fee statement attached to his motion. (*Compare* Pl.'s Mot. at 6 *with* Pl.'s Mot., Ex. C at 2.) The court relies on the numbers provided in the itemized statement. (*See infra*, § II.)

[2] A more extensive factual background is set out in the District Judge's summary judgment opinion. [Dkt 28.]

[3] Citations to the administrative record compiled by the Social Security Administration are referred to as "R. __." [*See* dkt 15.]

[4] Residual functional capacity is defined as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a).

2

symptoms are not entirely credible prior to December 7, 2005." (R. 19.) The ALJ further noted a "gap" in plaintiff's medical treatment records from August 1996 to December 2005. (R. 18.) The ALJ went on to find that plaintiff was disabled as of December 7, 2005 due to narcolepsy symptoms, and was therefore entitled to SSI as of May 10, 2006, the date of his application. (R. 19-20.)

Plaintiff requested a review of the unfavorable portion of the ALJ's decision on November 12, 2008, which was denied. (R. 1-3.) Plaintiff thereafter filed this action on August 24, 2009 seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c). [Dkt 1.] Plaintiff moved for summary judgment, challenging the ALJ's determination of plaintiff's credibility, his finding of the onset date of plaintiff's disability, and his assessment of plaintiff's RFC. (Pl.'s Mem. Mot. Summ. J. at 6-13.) [Dkt 19.]

The District Judge granted plaintiff's motion in part and remanded the case back to the Commissioner for further proceedings. (Mem. Op. & Order.) The District Judge held that "the ALJ failed to articulate sufficiently the grounds for his decision regarding the narcolepsy impairment and failed to build an accurate and logical bridge between the evidence and his conclusion." (*Id.* at 9.) Specifically, the District Judge found the ALJ made the following errors: (1) he failed to set forth specific reasons for his conclusion that plaintiff's statements were not entirely credible, which was "precisely the kind" of error Social Security Ruling ("SSR") 96-7p was designed to avoid; (2) he failed to explain why he gave substantial weight to the medical expert who testified at the hearing over other evidence in the record; (3) he failed to consider all the factors set forth in SSR 83-20 in determining the onset date of plaintiff's disability, including testimonial evidence of plaintiff and others close to him, evidence plaintiff could not afford medication, and non-contemporaneous medical evidence; and (4) he failed to consider all of the non-medical evidence in determining

3

plaintiff's RFC prior to December 7, 2005, which he should have done pursuant to SSR 96-8p. (*Id.* at 9-14.)

The District Judge noted that the record might contain evidence to support the ALJ's conclusions, such as evidence that plaintiff worked as a rehabber in 2006 and that he failed to pursue medical treatment. (*Id.* at 11, 14.) However, because the ALJ failed to consider all of the evidence and failed to connect the evidence to his findings, the District Judge remanded the case for further proceedings. (*Id.* at 1, 14.) The District Judge instructed the ALJ upon remand to describe what weight he gave the evidence and to give specific reasons why he found some evidence more consistent with the record, to explain why he disregarded evidence, including but not limited to the reports of plaintiff's friends and family, and to examine what evidence was credible and what was not. (*Id.* at 14-15.)

**Legal Standard**

The EAJA allows for an award of attorneys' fees and costs to a party who prevails in a civil action against the United States, "including proceedings for judicial review of agency action." 28 U.S.C. § 2412. The court may award fees under the EAJA when: (1) the claimant was a "prevailing party"; (2) the government's position was not "substantially justified"; (3) there were no special circumstances that would make an award unjust; and (4) the claimant files a complete and timely application. 28 U.S.C. § 2412(d)(1)(A), (B); *Stewart v. Astrue*, 561 F.3d 679, 683 (7th Cir. 2009). The fees requested must also be reasonable, and the claimant must provide an itemized statement from his attorney of the time expended on the case and the rate at which fees and other expenses were computed. 28 U.S.C. § 2412(b), (d)(1)(B).

**Discussion**

In this case, the parties agreed before the District Judge that plaintiff was the prevailing party. [*See* dkt 38.] Plaintiff's application was timely filed, and the Commissioner has not raised any special circumstances that would make an award of fees and costs unjust. The only element the parties contest is whether the Commissioner's position was "substantially justified." The Commissioner bears the burden on this issue. *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004).

I.  **The Commissioner's Position Was Not Substantially Justified.**

The term "substantially justified" is "neither defined nor self-evident." *United States v. Thouvenot, Wade & Moerschen, Inc.*, 596 F.3d 378, 381 (7th Cir. 2010). The Supreme Court has held a substantially justified position is one that it is "justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Put another way, the government must show it "had a rational ground for thinking it had a rational ground for its action." *Kolman v. Shalala*, 39 F. 3d 173, 177 (7th Cir. 1994). The EAJA is not an automatic fee-shifting statute; therefore, the government can lose and still be substantially justified. *Id*. at 569.

However, in enacting the EAJA, Congress intended "to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions." *Astrue v. Ratliff*, __ U.S. __, 130 S. Ct. 2521, 2530 (2010) (Sotomayor, Stevens & Ginsburg, JJ., concurring) (citations and quotations omitted). Therefore, the government's position "must have sufficient merit to negate an inference that the government was coming down on its small opponent in a careless and oppressive

5

fashion." *Thouvenot*, 596 F.3d at 381-82. To negate that inference and demonstrate its position was substantially justified, the Commissioner must establish: (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the legal theory propounded. *Golembiewski*, 382 F.3d at 724. Whether the government has done so is a decision left to the discretion of the district judge. *U.S. v. Hallmark Constr. Co.*, 200 F.3d 1076, 1078 (7th Cir. 2000). The court is to consider both the government's litigation position and pre-litigation conduct, but makes only a singular determination for the case as a whole. *Id.* at 1080-81.

The Seventh Circuit recently addressed the issue of substantial justification in affirming a denial of EAJA fees. *Bassett v. Astrue*, __ F.3d __, 2011 WL 2083979 (7th Cir. May 27, 2011) (No. 10-3454). In *Bassett*, the ALJ had found the plaintiff capable of light work prior to his 55th birthday, but failed to explain how she arrived at that precise date. *Id.* at *1. The district court remanded the case for further explanation of how the ALJ determined the onset date of disability, but found that the ALJ's opinion was otherwise adequate in her discussion of the evidence. *Id.* The plaintiff then brought a petition for EAJA fees, which the district court denied because the Commissioner's position was deemed substantially justified. *Id.*

The Seventh Circuit, applying the deferential abuse-of-discretion standard, upheld the denial of EAJA fees on the basis that the deficiency in the ALJ's opinion amounted only to an articulation error. *Id.* "[I]t typically takes something more egregious than just a run-of-the-mill error in articulation to make the commissioner's position unjustified . . . ." *Id.* at *2. That shortcoming *alone* is usually not enough to make the opinion or the Commissioner's defense of it unjustified. Rather, it typically takes something like an ALJ "ignoring or mischaracterizing a significant body

of evidence, or the commissioner's defending the ALJ's opinion on a forbidden basis" to render the Commissioner's position unjustified. *Id.*

Here, the Commissioner's conduct, when viewed in its entirety, was not substantially justified because the ALJ's errors went beyond "a run-of-the-mill" error in articulation. Certainly, part of the problem here was that the ALJ "failed to articulate sufficiently the grounds for his decision regarding the narcolepsy impairment and failed to build an accurate and logical bridge between the evidence and his conclusion." (Mem. Op. & Order at 9.) The District Judge even noted that there might have been evidence in the record to support the ALJ's conclusions, had he actually indicated he had considered it. (*Id.* at 11, 14.) However, unlike *Bassett,* the ALJ's failure in this case was directly contrary to prevailing law and made his opinion essentially unreviewable. When an ALJ "contravene[s] longstanding agency regulations, as well as judicial precedent," his position does not have a reasonable basis in law and fact and cannot be called substantially justified. *See Stewart*, 561 F.3d at 684; *Golembiewski*, 382 F.3d at 724.

Plaintiff points to two significant shortcomings in the ALJ's decision that contravened the Commissioner's own rulings and established precedent, and were therefore not substantially justified. First, the ALJ failed to comply with the well-established standards set forth in SSR 96-7p and legal precedent in evaluating plaintiff's credibility. Second, he failed to consider all of the non-medical evidence supporting plaintiff's claim that he was disabled prior to December 2005, and in doing so violated SSR 83-20. (Pl.'s Mot. at 3-6.) Moreover, the Commissioner was not justified in his attempts to defend these errors by the ALJ at the litigation stage.

7

**A. The ALJ's failure to follow SSR 96-7p in evaluating plaintiff's credibility was not substantially justified.**

The ALJ's credibility finding in this case contained several errors that have been repeatedly criticized in this circuit. First, he made the following statement in finding plaintiff less than credible: "Upon considering the evidence of record, I find that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms. However, the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible prior to December 7, 2005." (R. 19.) Aside from the preceding statement, the ALJ's opinion was devoid of any discussion of the reasons why he did not find plaintiff's statements credible.

The Seventh Circuit has characterized that precise language as a "boilerplate" credibility finding common in many ALJ opinions in Social Security disability claims. *Parker v. Astrue,* 597 F.3d 920, 921-22 (7th Cir. 2010). And it further noted: "It is not only boilerplate; it is meaningless boilerplate. The statement by a trier of fact that a witness's testimony is 'not *entirely* credible' yields no clue to what weight the trier of fact gave the testimony." *Id*. at 922 (emphasis in original). While the *Parker* decision was issued after the ALJ's opinion in this case, it has long been established in this circuit that an ALJ must explain his credibility finding. *See, e.g., Golembiewski v. Barnhart,* 322 F.3d 912, 915-96 (7th Cir. 2003) (holding that the reasons for an ALJ's credibility finding may not be "implied"); *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (holding that the ALJ's "single, conclusory statement" of plaintiff's credibility warranted remand); *see also Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) ("[R]egardless whether there is enough evidence in the record to support the ALJ's decision,

8

principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ.").

Moreover, the Social Security Administration's own ruling, SSR 96-7p, requires that an ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186 at *2. In addition, SSR 96-7p lists seven factors the ALJ *must* consider in the credibility determination, including plaintiff's daily activities, his alleged symptoms, and the methods used to relieve his symptoms. *Id.* at *3. Here, the ALJ stated, in a brief sentence, that he considered "all symptoms" in accordance with SSR 96-7p, but there was no explanation of the reasons for his finding, no evaluation of plaintiff's statements, and no discussion of the factors set forth in the ruling. (*See* R. 18.) The District Judge noted that the ALJ's conclusory statements were "precisely the kind that Social Security Ruling 96-7p seeks to avoid by requiring specific reasons to support the conclusion." (Mem. Op. & Order at 11.) He also found the ALJ's explanation of his credibility assessment to be "even less descriptive" than that in *Zurawski*, where the ALJ provided only a "single, conclusory statement." (*Id.* at 10; *Zurawski*, 245 F.3d at 887.) The language of the district court's opinion is a factor to consider in evaluating the reasonableness of the government's position. *Hallmark Constr. Co.*, 200 F.3d at 1079; *see also Golembiewski*, 382 F.3d at 724 ("Strong language against the government's position in an opinion discussing the merits of a key issue is evidence" that the position was not substantially justified").

The ALJ also failed to discuss why plaintiff's statements were inconsistent with the objective medical evidence, which is another requirement of SSR 96-7p. The ALJ listed some of the medical

9

evidence, but engaged in no discussion of its relevance or how it bore on his credibility determination. (*Id.* at 18-19.) As the District Judge pointed out, simply restating the medical evidence is not sufficient to meet the requirements in SSR 96-7p. (Mem. Op. & Order at 10.) The ALJ did state that he gave the opinion of the medical expert considerable weight (R. 19), but he gave no specific explanation as to why he did so. (*See* Mem. Op. & Order at 11, "the statement [about giving the medical expert greater weight] is just as conclusory as the statement about claimant's credibility.")

The ALJ's failure to comply with SSR 96-7p, especially in light of established legal precedent criticizing such cursory treatment of a credibility determination, cannot be deemed "substantially justified" for the purposes of an EAJA fee award. *See Golembiewski,* 382 F.3d at 724-25. Had the ALJ engaged in some credibility discussion, but merely neglected to "connect all the dots in his analysis," his conclusion, even if insufficient, might have been justified for EAJA purposes. *See Cunningham v. Barnhart*, 440 F.3d 862, 864-65 (7th Cir. 2006). However, because he essentially ignored the well-established standards for making a credibility determination, he did not demonstrate a reasonable legal basis for his conclusion or a reasonable connection between the facts and law.

Nor was the Commissioner substantially justified in defending the ALJ's credibility finding in the summary judgment phase. In the face of substantial Seventh Circuit authority criticizing such credibility findings as the one the ALJ made here, the Commissioner's argument that the analysis was sufficient merely compounded the errors of the ALJ. (*See* Def.'s Resp. Mot. Summ. J. at 9.) [Dkt 23-2.] Notably, the *Parker* decision explicitly denouncing the very boilerplate analysis the ALJ used in this case pre-dates the Commissioner's summary judgment brief. (*See* dkt 23-2.) To

continue to argue that such an approach was proper after *Parker* was unjustified.

The Commissioner was also unjustified in arguing that the ALJ properly assessed plaintiff's statements in accordance with SSR 96-7p, particularly those about his daily activities. (Def.'s Resp. Mot. Summ. J. at 10.) The Commissioner cited numerous portions of plaintiff's testimony about his daily activities that purportedly support the ALJ's credibility finding. (*See id.*) However, *the ALJ did not cite any of this evidence, nor indicate he even considered it.* The Commissioner should not have attempted to justify the ALJ's failures with post hoc justifications and citations to evidence the ALJ himself did not indicate he considered. *Parker*, 597 F.3d at 921-22. The Seventh Circuit has held that doing so violates the principles of *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943), which forbids an agency's lawyers from defending the agency's decisions on grounds the agency did not. *See id.* As the court of review, the District Judge was limited to the reasons supplied by the ALJ for his conclusions. *Stewart*, 561 F.3d at 684. The Commissioner should have known that well-settled legal principle when drafting the summary judgment brief, and was, therefore, not substantially justified in attempting to support the ALJ's findings with after-the-fact citations to additional evidence.

B.  **The ALJ's failure to consider all of the evidence was not substantially justified.**

The ALJ's opinion does not reflect that he considered all of the potentially pertinent evidence supporting plaintiff's claim that he was disabled prior to December 7, 2005. Rather, he accepted the medical expert's opinion that plaintiff was disabled as of that date without confronting contradictory non-medical evidence in the record. (*See* R. 17-20.) Significantly, the records of plaintiff's medical treatment prior to 2006 are sparse. The Commissioner argues that this gap in plaintiff's medical

11

treatment justified the ALJ's ultimate conclusion. However, medical evidence is not the only evidence an ALJ must consider when making a disability determination, particularly when the medical evidence itself is inconclusive. Two Social Security Rulings, SSR 83-20, 1983 WL 31249, and SSR 96-8p, 1996 WL 374184, specifically direct the ALJ to look to non-medical evidence. Here, however, the ALJ essentially ignored the non-medical evidence and adopted the medical expert's opinion, in contravention of these long-established agency rulings.

When precise medical evidence of the onset date of a claimant's disability is not available, SSR 83-20 provides that the ALJ may reasonably infer it. SSR 83-20, 1983 WL 31249 at *3. If the medical evidence is non-conclusive, SSR 83-20 instructs the ALJ that it may be necessary to look to the claimant's statements, his work history, and other evidence from which an onset date can be inferred. *Id.* Moreover, when an ALJ determines a claimant's RFC (the most the claimant can do in spite of his limitations) under SSR 96-8p, his finding "must be based on *all* of the relevant evidence in the case record," both medical and non-medical. SSR 96-8p, 1996 WL 374184 at *5. This includes lay evidence, reports of daily activities, and recorded observations. *Id.*

The ALJ did not consider the non-medical evidence in fixing plaintiff's onset date or in making the RFC determination that he could do "light" work. Relevant non-medical evidence does exist in the record, including plaintiff's statements that he could no longer work after June 1, 2000 due to narcolepsy symptoms, statements from friends and family about plaintiff's limitations, plaintiff's statements that he did not seek treatment and medication prior to 2005 because he could not afford it, and more general evidence that narcolepsy is a "lifelong disease." (*See* Mem. Op. & Order at 12-14.) In part because of the ALJ's improper credibility finding, he did not consider plaintiff's statements at all prior to December 2005. Furthermore, he did not engage in any analysis

12

of the lay witness statements, and thus there is no way to know whether he considered them or not.

Whether or not consideration of the non-medical evidence in this case would have changed the ALJ's conclusion is uncertain. However, an ALJ is not free to ignore entire lines of evidence. *See Golembiewski*, 382 F.3d at 724. The void in the ALJ's analysis made it impossible for the District Judge to determine whether he had even considered the non-medical evidence. Again, this was not a mere failure of articulation on the ALJ's part, but a contravention of the Commissioner's own rulings, and it was therefore not substantially justified. Moreover, the Commissioner's defense of the ALJ's errors at the summary judgment stage was essentially that, even if the ALJ had considered the non-medical evidence, his conclusion would have remained the same. (*See* Def.'s Resp. Mot. Summ. J. at 7-9.) Again, the Commissioner relied on improper post hoc citations to evidence the ALJ did not cite to support this argument. (*See id.*) The Commissioner was not substantially justified in attempting to correct the deficiencies in the ALJ's opinion at the litigation stage.

## II. Plaintiff's Fee Request is Reasonable.

Plaintiff seeks fees and costs of $5,777.37 for work done by his attorneys in the summary judgment proceedings and in preparing the present fee petition. (Pl.'s Reply at 9.) Although the Commissioner has not disputed the amounts requested, plaintiff still bears the burden of demonstrating his fee request is reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also Harris v. Astrue*, No. 08 CV 1893, 2009 WL 1684576 at *3 (N.D. Ill. June 15, 2009) (applying *Hensley* analysis to an EAJA fee award). Plaintiff is entitled to fees incurred in the underlying action as well as time spent preparing the EAJA petition. *See Commissioner, INS v. Jean*,

13

496 U.S. 154, 161-62 (1990).

Plaintiff provides a detailed itemization of the work performed by attorneys Barry A. Shultz and Anna Downs-Temple and legal assistants Judi Gayles and Jamie Mazer. (Pl.'s Mot., Ex. C.) In total, plaintiff requests fees for 30 hours of attorney time, 1.5 hours of legal assistant time, and $6.60 in copying costs. (*Id.*) Plaintiff requests a supplemental amount for 2.5 hours of Mr. Schultz's time spent on the fee petition, bringing the total attorney time requested to 32.5 hours. (Pl.'s Reply at 9.)

The time expended on this case was reasonable. Courts have noted that, generally speaking, up to 60 hours is a reasonable amount of time billed for a straightforward social security disability case. *See Schulten v. Astrue*, 2010 WL 2135474 at *6 (N.D. Ill. May 28, 2010) (collecting cases). Of the 32.5 attorney hours for which plaintiff seeks fees, about 20 hours were spent drafting briefs for summary judgment and EAJA fees, about one hour was spent communicating with the plaintiff by phone, and less than 10 hours were spent reviewing the administrative record, court orders, and the Commissioner's filings. (Pl.'s Mot., Ex. C; Pl.'s Reply at 9.) The administrative record in this case is nearly 400 pages long. [Dkt 15.] The summary judgment briefing plaintiff submitted to the court spanned a total of 21 pages and analyzed multiple legal issues. (*See* Pl.'s Mem. Mot. Summ. J.; Pl.'s Reply Summ. J.) [Dkt 19, 26.] Given their length and content, the time plaintiff's attorneys spent reviewing the record and other documents and drafting plaintiff's briefs was quite reasonable. In addition, the legal assistants spent 1.5 hours sending documents to plaintiff, preparing plaintiff's complaint for filing, and preparing the itemization of time for the EAJA petition, a reasonable amount of time for those tasks.

Plaintiff seeks an hourly rate of $173.75 for his attorneys and $85 an hour for the legal

assistants. The EAJA provides a statutory cap of $125 per hour on attorneys fees, but the court may increase that amount if justified by an increase in the cost of living or special factors. 28 U.S.C. § 2412(d)(2)(A)(ii). The Seventh Circuit has acknowledged that, "given the passage of time since the establishment of the hourly rate, a cost-of-living adjustment is warranted" for the time period in which the fees were incurred. *Tchemkou v. Mukasey*, 517 F.3d 506, 512 (7th Cir. 2008).

Plaintiff states that his requested hourly rate is supported by the cost of living calculations in the Consumer Price Index, a printout of which is attached to his motion. (Pl.'s Mot, Ex. A.) Courts in this district have allowed plaintiffs in EAJA cases to use the Consumer Price Index to adjust hourly attorney rates to account for cost of living increases. *See, e.g., Warren v. Astrue*, No. 09 C 6498, 2010 WL 5110217 at *5 (N.D. Ill. Dec. 8, 2010). It is not entirely clear on the face of the table plaintiff submitted how it supports the increase from $125 in 1996 (the year the EAJA statute was amended to reflect that amount) to $173.75 in February 2010, when plaintiff represents his counsel did the bulk of the work in this case. (*See* Pl.'s Mot. at 7, Ex. A, Ex. C at 2.) However, the Commissioner has not objected to the hourly rate, and courts have approved comparable rates for work in Social Security cases performed in late 2009 and 2010. *See, e.g., Warren*, 2010 WL 5110217 at *5 (awarding $173.75 hourly rate); *Hamrick v. Astrue*, No. 09 C 179, 2010 WL 3862464 at *4 (N.D. Ind. Sept. 27, 2010) (awarding $173 hourly rate). Moreover, courts have awarded $85 an hour for legal assistants. *See id.* Therefore, plaintiff's rate is awarded at $173.75 per hour for attorney time and $85 an hour for legal assistant time.

Plaintiff also requests costs in the amount of $6.60 for making three photocopies of the summary judgment briefing, one for the file, one for the court, and one for the client. (Pl.'s Mot., Ex. C at 2.) The cost of the copy for the court is allowable under 28 U.S.C. § 2412(a) and 28 U.S.C.

15

§ 1920(4), and the Commissioner did not oppose the cost of the others.

In sum, plaintiff is awarded attorneys' fees in the amount of $173.75 per hour for 32.5 hours of work, which totals $5,646.88. Plaintiff is awarded the legal assistants' time at $85 per hour for 1.5 hours of work, for a total of $127.50. Plaintiff is awarded costs in the amount of $6.60. Plaintiffs' total award under the EAJA is $5,780.98.

Finally, a word about assignability of EAJA fees and costs. As plaintiff acknowledges in his reply, under *Astrue v. Ratliff*, __ U.S. __, 130 S. Ct. 2526-27 (2010), an award under the EAJA belongs to the plaintiff and can be offset to satisfy a pre-existing debt the plaintiff owes the United States. Accordingly, the court cannot order that fees be payable directly to plaintiff's counsel, even though plaintiff has so agreed. (Pl.'s Mot., Ex. B.) The award of costs is also payable to plaintiff.[5]

## CONCLUSION

For the foregoing reasons, plaintiff's motion for an award of fees and costs is granted in the amount of $5,780.98.

**IT IS SO ORDERED.**

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Geraldine Soat Brown
United States Magistrate Judge

Dated: June 14, 2011

---

[5] Plaintiff states that he understands the Commissioner's policy after a fee award is entered is to determine whether plaintiff owes pre-existing debts to the government, and, if no such debts are owed, to direct that the fee award and costs be made payable to plaintiff's attorney pursuant to the EAJA assignment made by plaintiff. (Pl.'s Reply at 1.)